# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* SARAH DUNTSCH,<br><br>Plaintiff,<br><br>v.<br><br>SUPERIOR CARE PHARMACY, et al.,<br><br>Defendants. | Case No. 18-cv-1002-MMA-MSB<br><br>**ORDER DENYING DEFENDANT DAVID WALROD'S MOTION TO DISMISS**<br><br>[Doc. No. 81] |

On September 16, 2024, the United States of America filed a first amended intervenor complaint against Superior Care Pharmacy, Inc., Derek Ishaque, David Walrod, and Justus Benjamin alleging, among other things, violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* Doc. No. 76 ("FAC"). On September 30, 2024, Defendant David Walrod filed a motion to dismiss. Doc. No. 81. The government filed a response in opposition to Walrod's motion, to which Walrod replied. Doc. Nos. 83, 85. The Court found this matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 86. For the reasons set forth below, the Court **DENIES** Walrod's motion to dismiss.

## I. Background[1]

The core factual allegations as alleged in the initial intervenor complaint, Doc. No. 34, remain largely unchanged. In short, Superior Care Pharmacy, Inc. ("SCP") provides pharmacy services to skilled nursing facilities in San Diego County. FAC[2] ¶¶ 2, 19. Defendants Ishaque, Walrod, and Benjamin were SCP's principals during the relevant events and time period. *Id.* ¶¶ 20–22. Generally speaking, the government alleges that Defendants defrauded the United States of millions of dollars by submitting false claims to Medicare and TRICARE. *Id.* ¶ 7–8. Additionally, the government alleges that when a search warrant was executed at SCP's premises in 2023, 184,635 controlled substances were missing. *Id.* ¶ 168. As a result, the government brings seven claims: (1) presentation of false claims in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A), against SCP and Ishaque; (2) using false statements to get false claims paid in violation of the FCA, *id.* § 3729(a)(1)(B), against SCP and Ishaque; (3 & 4) failure to make, keep, or furnish records in violation of the Controlled Substances Act ("CSA"), 21 U.S.C. § 842(a)(5), against SCP, Ishaque, and Benjamin; (5) fraudulent transfer in violation of the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3304(b)(1)(A), against all Defendants; (6) payment by mistake against all Defendants; and (7) unjust enrichment against all Defendants.

## II. Legal Standard

A Rule[3] 12(b)(6) motion tests the legal sufficiency of the claims made in the complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is provided "fair notice of what the

---

[1] Because this matter is before the Court on a motion to dismiss, the Court accepts as true the allegations set forth in the Complaint. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

[2] The government neglected to file a redline version of their amended pleading as is required by the Civil Local Rules. CivLR 15.1.c. The Court cautions the government that any further noncompliant filings may be rejected.

[3] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

. . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570. The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). A court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

### III. DISCUSSION

The Court previously issued an Order granting in part Defendants Walrod's and Benjamin's motions to dismiss the initial intervenor complaint. Doc. No. 64. The Court incorporates that Order by reference. Relevant here, the Court denied their requests to dismiss Claim 5 for violation of the FDCPA, finding that the government had adequately pleaded that SCP's transfers to Walrod and Benjamin were fraudulent. *Id.* at 9–10, 13–14. However, the Court dismissed Claims 6 and 7, for payment by mistake and unjust enrichment, based upon the government's failure to plead the applicable law, *id.* at 14, as well as the government's failure to plead Walrod's involvement in the double-billing fraud with particularity as is required under Rule 9(b), *id.* at 9. Walrod now moves to dismiss Claims 5, 6, and 7. *See* Doc. No. 81.

### A.  Claim 5 – Federal Debt Collection Procedures Act

The government's fifth claim is for violation of the FDCPA. As the Court previously explained, Doc. No. 64 at 13, the FDCPA includes a fraudulent transfer provision, which allows the government to void a fraudulent transfer by a debtor owing a debt to the United States. *United States SBA v. Bensal*, 853 F.3d 992, 996 (9th Cir. 2017). In particular, the FDCPA provides that "a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation . . . with actual intent to hinder, delay, or defraud a creditor." 28 U.S.C. § 3304(b)(1)(A).

The Court has already determined that the government's allegations are sufficient to state an FDCPA fraudulent transfer claim against Walrod. Doc. No. 64 at 10, 13–14. The Court previously described the alleged fraudulent transfer. *Id.* at 9–10. In short, the asserted debt here is SCP's FCA liability—i.e., the money owed to the government that was improperly paid out through the double-billing scheme. FAC ¶ 216. And according to the government, SCP transferred money to Walrod to avoid this debt after Walrod and other SCP principals became aware SCP was being investigated by the government for FCA violations. *Id.* ¶¶ 212–215. As a result, SCP was unable to pay its debt to the government. *Id.* ¶ 220. This is, again, sufficient to state a claim against Walrod, and Walrod's arguments to the contrary do not change this outcome. Issues of whether SCP actually incurred a debt to the government, whether Walrod was aware of this debt, and whether SCP was left insolvent after the transfers are not appropriate for resolution on this record and at the motion to dismiss stage. Here, accepting the allegations as true, SCP transferred to Walrod, and Walrod accepted, $697,500 after SCP incurred its FCA liability to the government, knowing that this money was owed to the government, and SCP was left unable to pay its debt to the government as a result. The Court finds that these allegations are sufficient to state an FDCPA claim against Walrod. Accordingly, the Court **DENIES** Walrod's motion to dismiss Claim 5.

**B.    Claims 6 & 7 – Common Law Claims**

The government's sixth claim is for payment by mistake, and its seventh claim is for unjust enrichment. As noted above, the Court previously dismissed these claims with leave to amend. Doc. No. 64 at 9, 14. Walrod does not argue that the government failed to cure the previously identified deficiencies. Instead, Walrod makes the legal argument that he should not be held liable for SCP's receipt of funds. Doc. No. 81-1 at 18–22.

As a threshold matter, it appears that these two claims, which the government now pleads pursuant to federal common law, FAC ¶¶ 221–28, are merely alternative theories of relief, which the government may bring alongside its FCA claims. *United States v. Mead*, 426 F.2d 118, 124 (9th Cir. 1970); *United States v. Peters*, No. 2:24-cv-00287 WBS CKD, 2024 U.S. Dist. LEXIS 122120, at *15 (E.D. Cal. July 10, 2024) (collecting cases). As to the government's payment by mistake claim, the Ninth Circuit has recognized that such a claim arises under the federal common law and is a remedy available to the United States independent of statute. *United States v. Mead*, 426 F.2d 118, 124 (9th Cir. 1970). Here, the government identifies numerous claims SCP submitted to Medicare, FAC ¶ 96, and TRICARE, *id.* ¶ 98, and the funds SCP received from these government programs. "If the government made these payments under an erroneous belief which was material to the decision to pay, it is entitled to recover the payments." *Mead*, 426 F.2d at 124. The government duly alleges that it was mistaken as to whether SCP was entitled to have these claims funded; according to the government, it was unaware at the time of payment that these claims were previously included in Medicare's Part A and TRICARE's pharmacy payments to the SNFs. FAC ¶¶ 95, 97, 229. Thus, the government has duly pleaded a claim in the alternative for payment by mistake.

Similarly, because the government seeks to recover funds improperly paid pursuant to federal programs, it may pursue an unjust enrichment claim. *See United States v. Bellecci*, No. CIV S-05-1538 LKK GGH PS, 2008 U.S. Dist. LEXIS 23892, at *21–22 (E.D. Cal. Mar. 25, 2008) ("However, federal common law supports reimbursement of

federal monies improperly paid pursuant to federal programs.") (collecting cases).

Walrod's arguments in support of dismissal of these claims are more appropriate for summary judgment. For example, Walrod attempts to distinguish *Mead* on the grounds that he did not receive any funds directly from the government. Doc. No. 81-1 at 19. But based upon the government's pleading, Walrod directly benefitted from the double-billing scheme. *Mead*, 426 F.2d at 124 (finding liable the farmers who "received benefits as a result of the transaction"). And ultimately, determination of whether the government's payments to SCP "flow" to Walrod is not appropriate for resolution at this stage. Consequently, the Court **DENIES** Walrod's motion to dismiss Claims 6 and 7.

**C.     Statute of Limitations**

Finally, Walrod argues that "all claims prior to May 21, 2018, should be barred." Doc. No. 81-1 at 22. So far as the Court can surmise, Walrod seeks dismissal of Claims 5, 6, and 7 on the basis that the government failed to timely plead these claims within the statute of limitations. The parties agree that the applicable statute of limitations for federal claims for violation of the FDCPA, payment by mistake, and unjust enrichment is six years. 28 U.S.C. § 2415(a); *id.* § 3306(b).

In May 2018, Relator Sarah Duntsch initiated this action under seal asserting one cause of action for violation of the FCA. *See* Doc. No. 1. The factual basis for her claim was that Defendants submitted false claims to Medicare and TRICARE between 2013 and 2018. *See, e.g., id.* ¶ 82. For over five and a half years, the government requested and obtained extensions of time to make an intervention decision based upon the assertion that it was still investigating the claim and allegations. Doc. Nos. 2–3, 5–27. After the Court issued an order to show cause in September 2023, Doc. No. 28, the government elected to intervene in October, and filed the initial intervenor complaint on January 4, 2024, Doc. No. 34.

By way of the initial intervenor complaint, the government pleaded seven claims alleging violations of the FCA (Claims 1 & 2), CSA (Claims 3 & 4), and FDCPA (Claim 5) as well as payment by mistake (Claim 6) and unjust enrichment (Claim 7). *See id.* In

September 2024, the government filed its first amended intervenor complaint, asserting these same seven causes of action. *See* FAC.

As to the government's FDCPA claim, the allegedly fraudulent transfers that the government seeks to void occurred in 2020. FAC ¶¶ 212–215. Thus, the government's initial pleading of its FDCPA claim in January 2024 is facially timely. Walrod does not argue otherwise.

With respect to the government's common law claims, the parties dispute whether they relate back to the Relator's *qui tam* filing. As noted above, the Relator did not plead these common law claims against Defendants in her initial pleading. Rather, the government asserted them for the first time in its January 4, 2024 initial intervenor complaint. Doc. No. 34 at 30–31. Factually speaking, these common law claims are based upon the Defendants' alleged double-billing of Medicare and TRICARE. Doc. No. 34 ¶¶ 162, 183, 185; FAC ¶¶ 229, 250, 255.

According to both the initial and first amended intervenor complaints, the alleged Medicare double-billing fraud took place between January 2013 and September 2019, FAC ¶ 116, and the alleged TRICARE double-billing fraud occurred between February 2013 and September 2020, *id.* ¶ 117. These allegations comport with the Relator's initial pleading in 2018, through which she alleged that SCP had been double-billing Medicare and TRICARE since 2013. *See, e.g.*, Doc. No. 1 ¶ 82. Rule 15(c) provides that an amendment relates back to the date of an original pleading where, for example, "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; . . . ." Fed. R. Civ. P. 15(c)(1)(B). Thus, the Court agrees with the government that these two common law claims relate back to the initial filing because they stem from the same conduct, transaction, or occurrence alleged by the Relator.

Walrod does not contend that the factual basis underlying the government's common law claims is not the same conduct, transaction, or occurrence set out in the Relator's complaint. Instead, he argues against application of the relation back doctrine,

first asserting that the government does not allege any FCA claims against him. Doc. No. 81-1 at 23. But the Relator pleaded her FCA claim against Walrod as co-owner and President of SCP. Doc. No. 1 ¶ 18; *id.* at 18. And the government similarly pleaded its two FCA claims against Walrod in the initial intervenor complaint. Doc. No. 34 at 27–28. Walrod does not explain why the government's election to forgo pursuit of FCA liability as to Walrod in the first amended intervenor complaint, *see* FAC, undermines the ability for the government's common law claims to relate back to the Relator's complaint.

Second, Walrod's contends that pursuant to 31 U.S.C. § 3731(b)(2), the government's FCA complaint is untimely because it was brought more than more than three years after the government learned facts material to these causes of action. Doc. No. 81-1 at 23. But this section, entitled "False claims procedure," provides that a civil action may not be brought more than 6 years after the date of the asserted violation, or more than 3 years after facts material to the right of action are or reasonably should have been known (but in no event later than 10 years after the violation), "whichever occurs last." 31 U.S.C. § 3731(b). Walrod does not explain why the 3-year tolling provision set forth in § 3731(b)(2) applies here. Moreover, the immediately proceeding subsection expressly provides that if the government elects to intervene, the government's pleading "shall relate back to the filing date of the complaint of the person who originally brought the action, to the extent that the claim of the Government arises out of the conduct, transactions, or occurrences set forth, or attempted to be set forth, in the prior complaint of that person." *Id.* § 3731(c). And again, Walrod does not argue that the factual basis underlying the common law claims was not set forth in the Relator's complaint. Nor does he argue that the Relator's filing of her May 21, 2018 complaint, which concerns events beginning in 2013, was untimely.

In this same vein, Walrod argues that the government's delay in intervening was dilatory and weighs against a finding that its intervenor complaint relates back. Doc. No. 81-1 at 23–24. The government did not apply for thirty (30) extensions, Doc.

No. 81-1 at 23, the government filed thirteen (13) motions for extension of time, Doc. Nos. 2 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, twelve (12) of which the Court granted, Doc. Nos. 3, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26. Regardless, because Walrod offers no persuasive argument undermining the relation back of the government's pleadings and common law claims, there is no need to consider whether the government should be equitably prohibited from relying on the FCA's tolling provision.

For all of these reasons, the Court **DENIES** Walrod's motion to dismiss on statute of limitations grounds.

### IV. CONCLUSION

Based upon the foregoing, the Court **DENIES** Walrod's motion to dismiss. The Court **DIRECTS** Walrod to file an Answer to the first amended intervenor complaint no later than fourteen (14) calendar days from the date of this Order.

**IT IS SO ORDERED**.

Dated: January 15, 2025

HON. MICHAEL M. ANELLO
United States District Judge